UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 3:20-CV-03675-X |
| v. | § | |
| | § | |
| AMBER KELLER and GORGEOUS | § | |
| GOODS LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Mary Kay Inc.'s (Mary Kay) motion for default judgment
against defendants Amber Keller and Gorgeous Goods, LLC (Gorgeous Goods) [Doc.
No. 19].  For the reasons below, the Court **GRANTS IN PART** the motion for default
judgment.

### I. Factual Background

Mary Kay is a global maker and wholesale distributor of cosmetics, skin care
products, toiletries, and other related products.  Its direct-sales model means that it
contracts with consultants to sell its products to the public and prohibits consultants
from selling online.  Mary Kay has a variety of quality controls in place to ensure that
damaged, poor quality, or expired products are not sold to the public.  Mary Kay
registered its MARY KAY® trademark in the 1960s and has used it consistently since
then.

As this case illustrates, e-commerce poses challenges for Mary Kay's direct-
sales model.  Because online sellers are not Mary Kay consultants, any Mary Kay

marked products bought online could be counterfeit or—even if Mary Kay made them—are no longer subject to Mary Kay's quality controls for poor quality, damaged, or expired products.  And negative online reviews of Mary Kay marked products don't exactly boost Mary Kay's reputation.

Mary Kay discovered in 2019 that Keller was selling Mary Kay marked products on eBay and other websites, terminated her status as a consultant, and reminded her that her obligation to not sell Mary Kay products online was still in effect.  eBay reviews for Keller's storefront indicated some customers received expired, damaged, previously used, tampered with, empty, or otherwise poor-quality products.  Mary Kay discovered more online sales in 2020 from Gorgeous Goods LLC, placed an order as a test, and determined the order was shipped from Keller's residence.

Mary Kay sued Keller and Gorgeous Goods LLC for trademark infringement, state and federal unfair competition, state and federal trademark dilution, and tortious interference with existing contracts.  At the time of the complaint, Keller allegedly identified herself as a senior sales director for Mary Kay on her Facebook profile.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. . . .  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The

court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

A default requires a court to accept as true a plaintiff's well pled allegations in a complaint, except regarding damages.[1]  As to personal jurisdiction, "[w]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[2]  Without an evidentiary hearing, "the plaintiffs retain the burden of proving personal jurisdiction, [but] they can satisfy that burden with a prima facie showing."[3]  The plaintiff may make his case with pleadings, affidavits, and other written materials.[4]  A defaulting defendant who the court lacked personal jurisdiction over may move to set aside the default judgment under Rule 60(b) or a collateral attack.[5]

In determining whether to enter a default judgment, courts conduct a two-part analysis.  First, courts examine whether a default judgment is appropriate under the

---

[1] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well pled when "all elements of [a] cause of action are present by implication"); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[2] *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[3] *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (cleaned up).

[4] *Id.*

[5] *Id.*

circumstances.[6]  Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[7]  Second, the Court assesses the merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[8]

## III. Analysis

The Court deems the facts on liability to be admitted.  Here, Mary Kay served both defendants with the complaint, and they have yet to respond.  The application for a clerk's default was supported by affidavits regarding service of process.  While Rule 55 allows for hearings when a party has not appeared, it does not command them.[9]  The Court will proceed without a hearing.

### A. Procedural Appropriateness of Default Judgment

The Court now turns to the six *Lindsey* factors.  First, there are no material

---

[6] *See U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

[7] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[8] *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[9] *But see* 15 U.S.C. § 1116(a) (providing that for Lanham Act injunctions, "[a]ny such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found").  Mary Kay has not asked, and this Court does not opine on, whether the failure to give notice of the motion for default judgment and the holding of a hearing prevent contempt as a method of enforcing this order.

facts in dispute because neither defendant filed any responsive pleading.  Second, regarding substantial prejudice, the defendants' failure to respond could bring adversarial proceedings to a halt and substantially prejudice Mary Kay but not themselves.  Third, the defendants' continual failure to respond or participate in this ligation clearly establishes grounds for the default.  Fourth, regarding mistake or neglect, the Court has no reason to believe the defendants are acting under a good faith mistake or excusable neglect.  Fifth, regarding the harshness of a default judgment, the judgment would grant a remedy prescribed by the Lanham Act— namely an injunction.[10]

The sixth issue is regarding whether the Court would grant a motion to set aside the default.  The only potential ground to set aside the judgment the Court is aware of is whether the Court has personal jurisdiction over the defendants, which could be the basis of a Rule 60(b) motion or a collateral attack.  No evidentiary hearing is needed because the Court can look to Mary Kay's well-pled jurisdictional facts.  But those facts must make a prima facia showing of personal jurisdiction over the defendants.   The jurisdictional facts Mary Kay alleges about the defendants' connections to Texas are:

> 10. This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of Texas and established sufficient minimum contacts with Texas by, among other things, advertising and selling infringing products bearing Mary Kay's trademarks to consumers within Texas through multiple highly interactive commercial websites, through the regular course of business, with knowledge that Mary Kay is located in Texas and is harmed in Texas as a result of Defendants' sales of infringing products to Texas

---

[10] 15 U.S.C. § 1116(a).

residents.  Defendants know that Mary Kay is located in Texas, among
other reasons, because Defendants received cease-and-desist letters
from Mary Kay that identified Mary Kay as a corporation located in
Texas.  In addition, Keller used to be a Mary Kay Consultant and is well
aware, from her time as a Consultant, that Mary Kay is located in Texas.
Mary Kay's claims arise out of Defendants' sales of infringing products
bearing Mary Kay's trademarks to Texas residents through the regular
course of business.

* * *

62. Upon information and belief, through their eBay Storefront and
Poshmark Storefront, Defendants accept and fulfill orders from Texas
residents for products bearing the Mary Kay Trademarks and cause
infringing products bearing the Mary Kay Trademarks to be shipped to
persons located in Texas through the regular course of business.[11]

The Court concludes these facts are sufficiently plausible in the default

judgment context to establish a prima facia case of specific personal jurisdiction over

the defendants.[12]  Other district courts have exercised specific personal jurisdiction

from interactive commercial websites with limited sales into Texas.[13]

Nor does the Court conclude that exercising personal jurisdiction over the

defendants would offend traditional notions of fair play and substantial justice.  The

Supreme Court has stated that, "where a defendant who purposefully has directed

---

[11] Doc. No. 1 at 3–4, 19.

[12] For the jurisdictional analysis, the Court cannot and does not factor in the defendants' sale
into Texas that Mary Kay placed.  Aside from that, Mary Kay monitoring software indicated that
the defendants have sold "more than 7,500 infringing products through their eBay Storefront for revenue
in excess of $161,000."  Doc. No. 1 at 19.  The Court will not require more of Mary Kay at this stage
because the defendants' state specific sales information is in the hands of the defendants.

[13] *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. GO Satellite Inc.*, 758 F. Supp. 2d 366, 374–75 (N.D. Tex.
2010) (exercising personal jurisdiction on basis of two admitted sales to Texas residents through
interactive commercial website); *cf. Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)
("When the contact stems from a product, sold or manufactured by the foreign defendant, which has
caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the
product into the stream of commerce with the expectation that it would be purchased by or used by
consumers in the forum state.").

his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[14]  Here, Mary Kay has shown purposeful availment from the defendants' sales into Texas.  And the defaulting defendants have not made a compelling case (or any case) that exercising jurisdiction would defeat traditional notions of fair play and substantial justice.

## B. Sufficiency of Mary Kay's Complaint

Next, the Court must assess the merits of Mary Kay's claims.  Although the defendants, by virtue of their default, are deemed to have admitted Mary Kay's well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[15]

### 1.  Trademark Infringement, Unfair Competition, and False Association

Mary Kay's Counts 1, 2, and 5 are respectively for: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a); (2) unfair competition and false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); and (3) trademark infringement and unfair competition under Texas common law.  These counts all have the same elements of proof: Mary Kay must show that (1) it possesses a legally protectable trademark, and (2) the defendants' use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship.[16]  When the products

---

[14] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[15] *Nishimatsu*, 515 F.2d at 1206.

[16] *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 483–84 (5th Cir. 2004); *Transparent Energy LLC v. Premiere Mktg. LLC*, No. 3:19-CV-03022-L, 2020 WL 4678438, at *5 (N.D. Tex. July 28, 2020) (Rutherford, J.), *report and recommendation adopted*, No. 3:19-CV-3022-L, 2020 WL 4673102

at issue bear the plaintiff's actual marks, courts hold that defendant's sales are likely to cause confusion if either: (1) the products it sells are materially different from products sold by the plaintiff,[17] or (2) the products being sold do not meet the plaintiff's legitimate quality controls or are being sold in a manner that prevents the plaintiff from being able to exercise its quality controls.[18]

Here, Mary Kay properly pled that its marks are valid and entitled to Lanham Act protection. And Mary Kay pled the defendants have created a likelihood of confusion because (1) the defendant's products are materially different in that they have no Mary Kay satisfaction guarantee and or Mary Kay customer service benefits;[19] (2) the products the defendants sell are not subject to and do not abide by Mary Kay's quality control requirements—including because the defendants have sold numerous products that are expired, damaged, previously used, tampered with, empty, or of otherwise poor;[20] and (3) Keller falsely identified herself as a "Senior Sales Director" for "Mary Kay" from "April 9, 2015 to present" on her Facebook profile

---

(N.D. Tex. Aug. 12, 2020) (Lindsay, J.).

[17] *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1300–02 (5th Cir. 1997).

[18] *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009) (Fish, J.).

[19] *See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009) (affirming preliminary injunction against defendant that was reselling products without plaintiff's warranty and concluding that at least two other courts that have considered the issue have determined that "material differences may include warranties and service commitments"); *see also Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001) (explaining that "[a] material difference is one that consumers consider relevant to a decision about whether to purchase a product" and that "the threshold of materiality must be kept low to include even subtle differences between products").

[20] *Weber*, 601 F. Supp. 2d at 852 (concluding a fact issue existed warranting trial in that "a reasonable juror [could] conclude that Mary Kay makes legitimate efforts to keep expired products out of the stream of commerce, and that the Webers are hindering that effort to such an extent that they are devaluing the Mary Kay mark").

page.[21]  Accordingly, Mary Kay has stated valid claims in Counts 1, 2 and 5 for false association under the Lanham Act and for trademark infringement and unfair competition under the Lanham Act and Texas common law.

### 2. *Trademark Dilution*

Mary Kay's claims for trademark dilution under the Lanham Act and state law (Counts 3 and 4) require Mary Kay to show: (1) its mark is "famous and distinctive;" (2) the defendants began using Mary Kay's mark after it became famous and distinctive; and (3) the defendants' use caused dilution of Mary Kay's trademark.[22] Dilution can be from "blurring" or "tarnishment," and dilution by tarnishment occurs "when a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality . . . in the defendant's goods with the plaintiff's . . . goods.'"[23]

Mary Kay has properly pled trademark dilution claims.  First, Mary Kay has established that the MARY KAY® trademark is famous and distinctive: (1) the mark was first registered in 1966; (2) Mary Kay has actively, continuously, and exclusively used it since that time to market and advertise its products; (3) the mark is distinctive, well-recognized by consumers; and (4) consumers trust the mark and recognize it as standing for quality, durability, and dependability.  Next, Mary Kay

---

[21] 15 U.S.C. § 1125(a)(1)(A) (Lanham Act provision allowing an action is "a false or misleading representation of fact" is "likely . . . to deceive as to the affiliation, connection, or association of such person with another person").

[22] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000).

[23] *Scott Fetzer Co.*, 381 F.3d at 489 (quoting *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 507 (2d Cir. 1996)).

has alleged the defendants began using the MARY KAY® trademark after it had become famous and distinctive.  Finally, Mary Kay has alleged that the defendants have diluted and tarnished its mark, causing customers a worse experience that they now associate with Mary Kay.  Accordingly, Mary Kay has stated valid claims in Counts 3 and 4 for trademark dilution under federal and state law.

### 3. Tortious Interference

Mary Kay's sixth and final claim is for tortious interference with existing contracts, which requires it to show: (1) it has an existing contract that is subject to interference; (2) defendants interfered with the contract through a willful and intentional act; (3) the act proximately caused injury to Mary Kay; and (4) the act caused Mary Kay actual damages or loss.[24]

Mary Kay has alleged: (1) it has contracts with its consultants that prohibit consultants from selling Mary Kay products to third parties who are not ultimate consumers and resell the products; (2) the defendants have intentionally, knowingly, and willfully interfered with Mary Kay's contracts by actively seeking out consultants and encouraging and pressuring them to breach their contracts by selling products to the defendants that defendants resold on the Internet; and (3) this intentional interference with Mary Kay's contracts has proximately caused significant monetary harm to Mary Kay, "including, but not limited to, loss of sales, damage to the value of its intellectual property, harm to the goodwill associated with the Mary Kay brand,

---

[24] *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

and damage to its existing and potential business relations."[25]  While Mary Kay has not proven its amount of damages (which is needed to award such damages in a default judgment), its pleading is sufficient to satisfy Rule 8.[26]  Accordingly, Mary Kay is entitled to a default judgment on all six claims.

## IV. Remedy

Instead of trying to prove damages, Mary Kay seeks a permanent injunction. A party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[27]

When there is a likelihood of confusion, "the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm. . . . The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill."[28]  As to the remedies available, "[b]ecause the harm lies in damage to the trademark owner's reputation and inability to control the quality of services or products by the unauthorized user, the harm is difficult to pinpoint as compensable damages."[29]  As to balancing hardships between the parties, "courts usually hold that

---

[25] Doc. No. 1 at 28.

[26] *See Mary Kay Inc. v. Anderson*, No. 3:17-CV-1889-B, 2018 WL 2230623, at *6 (N.D. Tex. May 16, 2018) (Boyle, J.) (holding that pleading "loss of sales for products and a loss of goodwill associated with its products" was sufficient for default judgment).

[27] *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013).

[28] *Anderson*, 2018 WL 2230623, at *6 (quoting *Joy Mfg. Co. v. CGM Valve & Gauge Co. Inc.*, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989)).

[29] *Id*. (cleaned up).

11

when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants."[30]  Injunctions are in the public interest because the Lanham Act is designed to "to protect the ability of consumers to distinguish among competing producers."[31]

Here, Mary Kay's well-pled allegations show a likelihood of confusion exists between its products and those the defendants sold, that this confusion will result in irreparable harm, and that money damages are inadequate compensation.  Further, Mary Kay has demonstrated that the harm to it outweighs the harm to the defendants if the Court grants an injunction and that the public interest favors an injunction.  The Court finds Mary Kay is thus entitled to a permanent injunction.

The remaining issue is the scope of the injunction.  An "injunction must 'state its terms specifically' and 'describe in reasonable detail' the conduct restrained."[32]  Mary Kay requests an injunction to prohibit the defendants from:

> (a) advertising or selling all Mary Kay products or any products bearing the Mary Kay Trademarks through **any storefront** on www.ebay.com ("eBay") and www.poshmark.com ("Poshmark"), including, **but not limited to**, the eBay storefront that has been called ""gorgeousgoodsllc" (accessible at https://www.ebay.com/usr/ gorgeousgoodsllc) and the Poshmark storefront that has been called "ssteazlee" (https://poshmark.com/closet/ssteazlee);
>
> (b) advertising or selling, **through any medium** (including **all Internet and non-Internet channels**), all Mary Kay products or any products bearing the Mary Kay Trademarks;
>
> (c) importing, exporting, manufacturing, producing, distributing,

---

[30] *Id.* (cleaned up).

[31] *Park N' Fly, Inc. v. Dollar Park & Fly*, 469 U.S. 189, 198 (1985).

[32] *Daniels Health Scis. L.L.C. v. Vascular Health Scis. L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting Fed. R. Civ. P. 65(d)).

circulating, selling, offering to sell, advertising, promoting, or displaying any Mary Kay products or products bearing any of the Mary Kay Trademarks;

(d) disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Mary Kay Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant has sold bearing these trademarks; and

(e) using in commerce any word, term, name, symbol, or device that leads consumers to believe Defendants are affiliated with or sponsored by Mary Kay.[33]

The Court takes each item in turn.  Items (a)–(c) essentially bar the defendants from buying or selling Mary Kay branded products.  Generally, the first sale doctrine allows the sale of another mark owner's good, even without the mark owner's consent.[34]  But the first sale doctrine doesn't apply if the defendant is selling materially different goods than the plaintiff.[35]

Here, Mary Kay's complaint makes much of the fact that Mary Kay's quality control measures mean that Mary Kay products the defendants are selling "are more likely to [be] poor quality, damaged, expired, or defective."[36]  Another judge of this Court concluded after a trial that "expired goods materially differ from goods sold directly by the manufacturer of those goods, if the manufacturer takes legitimate, non-pretextual steps to insure that its products are fresh," and that Mary Kay's

---

[33] Doc. No. 19-1 at 2–3.

[34] *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993).

[35] *Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2nd Cir. 1996).

[36] Doc. No. 1 at 34.

13

precautions were legitimate.[37]  The present facts compel the same conclusion here: poor quality, damaged, expired, or defective Mary Kay products are materially different than those Mary Kay sells.[38]

But here's the problem: Mary Kay wants to enjoin the defendants from selling any Mary Kay branded products.  But the Lanham Act does not support so broad an injunction.  If the defendants purchased good quality Mary Kay products from a consultant and resold them online, the Lanham Act wouldn't support an injunction.  And while the complaint alleges that some of the Mary Kay branded products could be defective, it makes no showing that all of the Mary Kay branded products are defective.  As a result, the Court must reformulate this injunction to prevents sales of materially different (e.g., defective) goods.[39]

That brings us to proposal (d): enjoining the defendants from disposing or altering records related to products sold with Mary Kay marks.  The Court finds this proposed injunction necessary to preserve Mary Kay's claims seeking monetary damages.

---

[37] *Mary Kay, Inc. v. Weber (Weber II)*, 661 F. Supp. 632,643 (N.D. Tex. 2009) (Fish, J.).

[38] On materiality, others have argued that a small enough operation will not undermine the significant Mary Kay Mark.  But here, there is no defendant to argue that, and the defendants have the information to do so.

[39] For example, at least twice in this division, judges on this Court have reformed overbroad proposed injunctions from Mary Kay because the Lanham Act allows a user to, for example, "use another's trademark . . . to the extent it is necessary to identify a product as having been manufactured by the mark owner."  *Anderson*, 2018 WL 2230623, at *7 (cleaned up); *see also Weber II*, 661 F. Supp. 2d at 646 ("Under federal trademark law, it is lawful to use another's trademark, but only to the extent it is necessary to identify a product as having been manufactured by the mark owner. . . .  The court notes, however, that the defendants should use caution every time they use the Mary Kay mark—even if that use directly precedes the name of a specific Mary Kay product.  Any use of the words 'Mary Kay,' without an explanation that the defendants are not Mary Kay and have no affiliation with Mary Kay, is suspect.").

14

Mary Kay's final requested injunction is to prohibit the defendants from using a communication in commerce that leads consumers to believe the defendants are affiliated with Mary Kay.  In wording the proposed injunction this way, Mary Kay avoids issues in its prior cases.[40]

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Mary Kay's motion for default judgment.

**IT IS SO ORDERED** this 8th day of April, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[40] *See supra* note 39.