UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-3675-X |
| | § | |
| AMBER KELLER, et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

The Court previously enjoined Defendants from selling "poor quality, damaged, expired, or defective" Mary Kay, Inc. ("Mary Kay") products and required Defendants to "disclose to Mary Kay the contact information and identities of every individual and entity that has provided [Defendants] with Mary Kay products."[1]  In spite of those orders, Defendants have continued to sell expired Mary Kay products and have failed to disclose any identities to Mary Kay.  Accordingly, Mary Kay filed two motions for orders to show cause, detailing multiple violations of the Court's injunctions.  [Docs. 26, 28].  The Court held a show-cause hearing and directed the clerk to mail a notice of that hearing to Defendants, as they had not appeared in this matter.  [Doc. 30].  Defendants were no-shows at the hearing.  After reviewing the record, the Court **GRANTS** Mary Kay's motions [Docs. 26, 28] and makes the following findings of fact and conclusions of law:

---

[1] Doc. 21 at 2.

1

## I. Findings of Fact

1. In April 2022, the Court entered judgment against Defendants and permanently enjoined them from "selling any Mary Kay products through any medium that are poor quality, damaged, expired, or defective" and required them to "disclose to Mary Kay the contact information and identities of every individual and entity that has provided [Defendants] with Mary Kay products and products bearing the Mary Kay trademarks" (the "Injunction").[2]

2. Notwithstanding, Defendants continued to sell expired Mary Kay products and refused to produce information about their source of expired Mary Kay products as required by the Injunction. Defendants are in contempt of court as a result of their repeated and continued violations of the Injunction.

3. To demonstrate Defendants' violations of the Injunction, in June, November, and December 2022, Mary Kay purchased multiple expired Mary Kay products from Defendants' storefronts on the online marketplaces www.poshmark.com ("Poshmark") and www.ebay.com ("eBay"), including a concealer product, a brow-definer pencil product, a lipstick product, three facial-highlighting pens, a MK Signature Cheek Color, a MK Signature Luscious Color Lipstick, a MK Signature Eye Color, four Mary Kay at Play Lip Balms, a Mary Kay Velocity Lightweight Moisturizer, a Mary Kay Nourishing Body Lotion, a Mary Kay Bronzing

---

[2] *Id.*

Powder, and a set of four Mary Kay Lip Liner Pencils (collectively, the "Purchased Products").[3]

4.   Each of the Purchased Products had been expired between two and eighteen years before Defendants sold them online.

5.   Many of the Purchased Products were from Mary Kay's "Signature" product line, which Mary Kay ceased manufacturing in 2012. Thus, all Signature-line products that Defendants have been selling and continue to sell necessarily expired at least seven years ago.

6.   In addition to the Purchased Products, at the time that Mary Kay filed its motions for contempt, Defendants were listing at least twenty-five expired Signature-line products on Poshmark and eBay and had recently sold more than thirty other expired Signature-line products.

7.   To date, Defendants have ignored their obligation to produce to Mary Kay information about Defendants' source for the expired Mary Kay products they are selling as the Court ordered in its Injunction.

8.   As a result, on November 8, 2022, Mary Kay filed a motion for contempt and supplemented the motion on January 9, 2023 with several new instances of contempt. The motion for contempt and supplement requested that the Court sanction Defendants for their violation of the Court's order by (1) modifying the

---

[3] *See* Docs. 26 at 9–10, 28 at 3–5.

3

Injunction to prohibit Defendants from selling all Mary Kay products; (2) awarding Mary Kay its reasonable attorney fees incurred in investigating and prosecuting Defendants' contempt; and (3) imposing a coercive fine against Defendants.

9. Defendants were served with the Injunction, Mary Kay's motions for contempt, the Court's order setting a show-cause hearing, and communications from Mary Kay requesting the information about Defendants' sources for the expired Mary Kay products they are selling. Defendants have ignored these communications and have never appeared in this action.

10. On March 20, 2023, the Court held a show-cause hearing to determine whether Defendants should be held in contempt and sanctioned. Counsel for Mary Kay appeared, but neither Defendants nor any counsel for Defendants appeared.

11. During the hearing, the Court requested supplemental briefing concerning the Court's authority to sanction Defendants by modifying the Injunction to prohibit Defendants from selling all Mary Kay products. The Court also requested proposed findings of fact and conclusions of law in support of Mary Kay's requests for monetary sanctions.

12. Since the Court entered the Injunction, Mary Kay has incurred attorney fees investigating Defendants' Poshmark Storefront, conducting test purchases of Mary Kay products from the Poshmark Storefront, and preparing and filing the motions for contempt.

13.     From June 2022 through January 2023, Mary Kay's counsel spent 3.6 hours investigating and attempting to stop Defendants' ongoing sale of expired Mary Kay products and attempting to obtain Defendants' source information.

14.     Mary Kay's counsel spent an additional 49.5 hours researching, drafting, and revising the motions for contempt and supporting documents.

15.     The average hourly rate for Mary Kay's counsel who worked on these matters was $397.62, which is based on 13.6 partner hours billed at an hourly rate of $556.32 and 39.5 associate hours billed at an average hourly rate of $342.97. The associate rates ranged from $275 to $410 per hour.[4]   These rates are consistent with the prevailing market rates in the relevant community.

16.     In total, Mary Kay incurred $21,113.50 in attorney fees from June 2022 through January 2023, investigating Defendants' sales of expired Mary Kay products, attempting to obtain the source information Defendants were required to produce pursuant to the Injunction, and researching and preparing the motions for contempt.

---

[4] In particular, Daniel Wucherer billed 4.9 hours at a rate of $275 per hour, which equals $1,347.50.   Emma Morehart billed 33.1 hours at a rate of $350 per hour and 1.5 hours at a rate of $410 per hour.   In total, Morehart billed $12,200 on this matter.   Leslie Allen billed 1.8 hours at a rate of $440 per hour, which equals $792.   Kent Britt billed 11.2 hours at a rate of $570 per hour, and 0.6 hours at a rate of $650 per hour.   In total, Britt billed $6,774 on this matter.   Added together, those attorneys billed $21,113.50 on this matter.

## II. Conclusions of Law

### A. Defendants Are in Contempt for Violations of the Injunction

1. The Injunction is definite and specific in the requirements imposed on Defendants.[5]

2. Defendants are in contempt for violating the Injunction by selling Mary Kay products on eBay and Poshmark that are poor quality, damaged, expired, or defective.

3. Defendants are also in contempt for violating the Injunction by failing to disclose to Mary Kay the contact information and identities of every individual and entity that has provided Defendants with Mary Kay products and products bearing the Mary Kay trademarks.

### B. Sanctions

4. Upon finding civil contempt, a court has broad discretion to impose judicial sanctions to "protect the sanctity of its decrees and the legal process"[6] and to "coerce compliance with its orders and compensate the moving party for any losses sustained."[7]

---

[5] *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (finding contempt where order was "definite and specific" and defendants violated it (cleaned up)).

[6] *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005).

[7] *Mary Kay Inc. v. Designs by Deanna, Inc.*, No. 3:00-CV-1058-D, 2013 WL 6246484, at *4 (N.D. Tex. Dec. 3, 2013) (Fitzwater, J.).

5. Contempt sanctions can include attorney fees, fines, modification of the original order, and other actions on a case-by-case basis.[8]

### 1. Reasonable Attorney Fees

6. Reasonable attorney fees are available as a civil-contempt sanction "[a]lmost without exception" because they compensate injured parties for the inconvenience and expense of investigating and prosecuting the contempt.[9]

7. The Fifth Circuit uses the lodestar method for calculating reasonable attorney fees.[10]

8. The "lodestar" amount is determined by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.[11]

9. The "lodestar" is a presumptively reasonable fee, and it can only be adjusted in exceptional circumstances.[12] Lodestar hourly rates are based on "the prevailing market rates in the relevant community."[13]

10. Courts sometimes take an additional step to determine whether a lodestar should be adjusted downward or, in some cases, upward based on its analysis

---

[8] *See, e.g., Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1306–07 (5th Cir. 1997) (affirming order requiring return of infringing products, production of documents reflecting infringing sales, sending of letter to customers of infringing products, attorney fees, and payment of ongoing fine per day for each day of non-compliance with order).

[9] *In re Skyport Glob. Commc'ns, Inc.*, 661 F. App'x 835, 841 (5th Cir. 2016) (cleaned up).

[10] *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379 (5th Cir. 2010).

[11] *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam).

[12] *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

[13] *Id.* at 551.

of multiple factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[14]

11.    However, there is a strong presumption of the reasonableness of the lodestar.[15] And the amount may not be adjusted based on a *Johnson* factor already accounted for in the lodestar calculation.[16]

12.    Counsel's requested hourly rates are prima facie reasonable because they were computed at counsel's customary billing rate, the rates are within the range of prevailing market rates, and the rates are not contested.[17]

---

[14] *Johnson*, 488 F.2d at 717–19.

[15] *Melendez v. DJJRN, Inc.*, No. 3:20-CV-102-S-BK, 2020 WL 7774940, at *5 (N.D. Tex. Nov. 16, 2020) (Toliver, M.J.), *report and recommendation adopted*, No. 3:20-CV-102-S-BK, 2020 WL 7771203 (N.D. Tex. Dec. 30, 2020) (Scholer, J.).

[16] *Richmond v. SW Closeouts, Inc.*, No. 3:14-CV-4298-K, 2016 WL 4368305, at *2 (N.D. Tex. Aug. 16, 2016) (Horan, M.J.).

[17] *See La. Power*, 50 F.3d at 328.

13. Counsel's hourly rates are customary rates paid by Plaintiff and within the range of prevailing market rates. The rates are also customary rates for the law firm that represents Plaintiff in this matter.

14. The median hourly rate for Texas intellectual property attorneys in 2022 was $404.[18]

15. Further, the rates submitted by Mary Kay for its counsel are well within the range of rates previously approved by the Northern District of Texas. In the last few years, courts have found rates for partners specializing in intellectual property law to be reasonable up to approximately $700 per hour.[19] Moreover, hourly rates for associates have been found to be reasonable up to at least $435 per hour.[20]

16. The rates submitted by Mary Kay for its counsel are also reasonable under the *Johnson* factors.

17. The total hours claimed by counsel are also reasonable and counsel exercised the required billing judgment in calculating the hours expended by providing documentation of the hours charged and the hours counsel has written off as unproductive, excessive, redundant, or not related to the motion for contempt.[21]

---

[18] *How Much Should I Charge as a Lawyer in Texas?*, CLIO, https://www.clio.com/resources/legal-trends/compare-lawyer-rates/tx/ (last visited June 16, 2023).

[19] *See SAP Am., Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 WL 6329690, at *6 (N.D. Tex. Dec. 4, 2018) (Kinkeade, J.), *aff'd*, 779 F. App'x 744 (Fed. Cir. 2019) (per curiam); *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 746–47 (E.D. Tex. 2019) (noting that the average billing rate for intellectual property partners in Texas was $606 in 2019).

[20] *See Tinnus*, 369 F. Supp. 3d at 746–47 (noting that the average billing rate for intellectual property associates in Texas was $435 in 2019).

[21] *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 2185193, at *2 (N.D. Tex. May 27, 2008) (Fitzwater, J.).

18. In addition, the work undertaken during this time was reasonable and necessary as it involved research, drafting, and review in the relatively unique area of modification of Lanham Act injunctions as contempt sanctions for unauthorized sales of trademarked products on various online platforms.

19. The declarations and exhibits supporting Mary Kay's request for attorney fees appropriately document necessary and reasonable attorney fees directly related to Defendants' contempt, and the imposition of attorney fees is an appropriate sanction for Defendants' contempt.

20. Accordingly, Mary Kay is entitled to an award of $21,113.50 in reasonable attorney fees incurred from June 2022 through January 2023 as a result of Defendants' contempt and as a sanction.

### 2. Monetary Fine

21. A conditional fine for violation of an injunction is appropriate so long as the fine is reasonably designed to force compliance with the injunction.[22]

22. The court's civil contempt powers are designed in large part to compel future compliance.[23]

23. Based on Defendants' repeated violations of the Injunction, the Court finds that the following fines are appropriate to coerce compliance: Defendants must pay Mary Kay $500 each time Defendants sell a poor quality, damaged, expired, or

---

[22] *Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, No. 3:21-CV-01974-X, 2022 WL 4538466, at *13 (N.D. Tex. Sept. 28, 2022) (Starr, J.).

[23] *See, e.g., id.*

defective Mary Kay product. Starting ten days from this order, Defendants must pay Mary Kay $500 for each day that they do not produce information to Mary Kay about their source of the poor quality, damaged, expired, or defective Mary Kay products.[24] These fines will cease once Defendants comply with the Court's orders.

### 3. Injunction Modification

24.     The Supreme Court has emphasized "the relative breadth of [courts'] contempt power" so that courts may enforce "submission to their lawful mandates."[25]

25.     A court may modify its previous injunction to "impose more stringent requirements on the defendant when the original purposes of the injunction are not being fulfilled in any material respect."[26] And "[i]n fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable."[27]

26.     The Court previously declined to enjoin Defendants from selling all Mary Kay products because the first-sale doctrine generally allows the sale of another's mark. But the Court now finds that the original purpose of its Injunction is not being fulfilled in any material respect because Defendants continue to sell poor

---

[24] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (approving of "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" because "such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged").

[25] *Id.* at 831.

[26] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 503 (5th Cir. 1980) (cleaned up).

[27] *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 154 (5th Cir. 1985) (cleaned up) (prohibiting a party "from ever using any semblance of the CONAN THE BARBARIAN theme in its current and future restaurants outside Austin").

11

quality, damaged, expired, or defective Mary Kay products. Accordingly, modification of the prior injunction is warranted.

27. The Court **ENJOINS** Defendants from selling any and all Mary Kay products until Defendants (1) appear in this Court, (2) pay Mary Kay's attorney fees as specified in this order, (3) pay any fines warranted by this order, and (4) produce information to Mary Kay about Defendants' source of the poor quality, damaged, expired, or defective products.[28] This is a conditional injunction, meaning that Defendants will no longer be subject to it once they satisfy the above conditions. Defendants will still be barred from selling poor quality, damaged, expired, or defective Mary Kay products pursuant to the Court's previous Judgment.

**IT IS SO ORDERED** this 19th day of June, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[28] *Cf. Bagwell*, 512 U.S. at 828 (approving of imprisonment as a civil contempt sanction so long as it is for "a fixed term" and "the contemnor is given the option of earlier release if he complies").